E-filing

1   <u>PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY</u>

2   Name   HERNANDEZ, PETER

3         (Last)        (First)        (Initial)

4   Prisoner Number _____ C-03015

5   Institutional Address CTF-C, P.O. Box 689, Soledad, CA 93960

6

7   **UNITED STATES DISTRICT COURT**
    **NORTHERN DISTRICT OF CALIFORNIA**

8   PETER HERNANDEZ,

9   (Enter the full name of plaintiff in this action.)

    CV 08    2278

10          vs.        )   Case No. _____

11  B. CURRY, Warden, et al.,  )  (To be provided by the clerk of court)

    )   **PETITION FOR A WRIT** **JSW**
12  _____)   **OF HABEAS CORPUS**

13  _____)   **(PR)**

14  _____)
    (Enter the full name of respondent(s) or jailor in this action)   )

15  _____)

16  <u>Read Comments Carefully Before Filling In</u>

17  <u>When and Where to File</u>

18        You should file in the Northern District if you were convicted and sentenced in one of these

19  counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20  San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21  this district if you are challenging the manner in which your sentence is being executed, such as loss of

22  good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23        If you are challenging your conviction or sentence and you were <u>not</u> convicted and sentenced in

24  one of the above-named fifteen counties, your petition will likely be transferred to the United States

25  District Court for the district in which the state court that convicted and sentenced you is located. If

26  you are challenging the execution of your sentence and you are not in prison in one of these counties,

27  your petition will likely be transferred to the district court for the district that includes the institution

28  where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS    - 1 -

1  <u>Who to Name as Respondent</u>

2      You must name the person in whose actual custody you are. This usually means the Warden or

3  jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced. These are not proper

5  respondents.

6      If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10  <u>A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE</u>

11      1. What sentence are you challenging in this petition?

12          (a)    Name and location of court that imposed sentence (for example; Alameda

13                 County Superior Court, Oakland):

14          **Los Angeles County Superior Ct.    Los Angeles, CA 90012**

15                 Court                          Location

16          (b)    Case number, if known _____**A-334928**_____

17          (c)    Date and terms of sentence **Mar. 9, 1979/seven(7) to Life**

18          (d)    Are you now in custody serving this term? (Custody means being in jail, on

19                 parole or probation, etc.)        Yes **XX**    No _____

20                 Where?

21                 Name of Institution: **Correctional Training Facility**

22                 Address: **P.O. Box 689, Soledad, Calif. 93960**

23      2. For what crime were you given this sentence? (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known. If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26  **P.C. § 187, murder in the first degree**

27  **(sentenced under P.C. § 1168)**

28  _____

PET. FOR WRIT OF HAB. CORPUS        - 2 -

3. Did you have any of the following?

    Arraignment:                         Yes __XX__    No _____

    Preliminary Hearing:              Yes __XX__    No _____

    Motion to Suppress:              Yes _____    No __XX__

4. How did you plead?

    Guilty _____    Not Guilty __XX__    Nolo Contendere _____

    Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

    Jury __XX__    Judge alone _____    Judge alone on a transcript _____

6. Did you testify at your trial?           Yes __XX__    No _____

7. Did you have an attorney at the following proceedings:

    (a)    Arraignment                 Yes __X__    No _____

    (b)    Preliminary hearing         Yes __X__    No _____

    (c)    Time of plea                Yes __X__    No _____

    (d)    Trial                         Yes __X__    No _____

    (e)    Sentencing                  Yes __X__    No _____

    (f)    Appeal                      Yes __X__    No _____

    (g)    Other post-conviction proceeding    Yes _____    No __XX__

8. Did you appeal your conviction?        Yes __X__    No _____

    (a)    If you did, to what court(s) did you appeal?

        Court of Appeal             Yes __X__    No _____

        Year: _____    Result:_____N/A_____

        Supreme Court of California    Yes __X__    No _____

        Year: _____    Result:_____N/A_____

        Any other court             Yes _____    No __XX__

        Year: _____    Result:_____

    (b)    If you appealed, were the grounds the same as those that you are raising in this

1        petition?                                    Yes _____    No XX

2        (c)   Was there an opinion?                  Yes XX       No _____

3        (d)   Did you seek permission to file a late appeal under Rule 31(a)?

4                                                     Yes _____    No XX

5              If you did, give the name of the court and the result:

6        _____

7        _____

8    9.  Other than appeals, have you previously filed any petitions, applications or motions with respect to

9    this conviction in any court, state or federal?              Yes XX       No _____

10       [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11   challenged the same conviction you are challenging now and if that petition was denied or dismissed

12   with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13   for an order authorizing the district court to consider this petition. You may not file a second or

14   subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15   U.S.C. §§ 2244(b).]

16       (a)   If you sought relief in any proceeding other than an appeal, answer the following

17             questions for each proceeding. Attach extra paper if you need more space.

18       I.    Name of Court: Los Angeles County Superior Court

19             Type of Proceeding: _____ habeas corpus petition _____

20             Grounds raised (Be brief but specific):

21             a. state/federal denial of due process _____

22             b. state/federal denial of equal protection _____

23             c. _____

24             d. _____

25             Result: petition denied          Date of Result: 9-24-07

26       II.   Name of Court: Second Dist. Court of Appeals/Div 1

27             Type of Proceeding: _____ habeas corpus petition _____

28             Grounds raised (Be brief but specific):

a._____(See attached)_____

b._____

c._____

d._____

Result: ___denied_____Date of Result: **1-11-08**

III.    Name of Court: ___California Supreme Court___

Type of Proceeding: ___Petition for Review___

Grounds raised (Be brief but specific):

a. (See attached copy of writ and Exhibits)

b._____

c._____

d._____

Result: ___denied_____Date of Result: **3-19-08**

IV.    Name of Court: _____

Type of Proceeding: _____

Grounds raised (Be brief but specific):

a._____

b._____

c._____

d._____

Result: _____Date of Result: _____

(b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes _____    No **XX**

Name and location of court: _____

**B. GROUNDS FOR RELIEF**

State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS       - 5 -

1   need more space.  Answer the same questions for each claim.

2          [Note:  You must present ALL your claims in your first federal habeas petition.  Subsequent

3   petitions may be dismissed without review on the merits.  28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4   499 U.S. 467,  111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5          Claim One:_____ (SEE ATTACHED PAPERWORK)_____

6   _____

7          Supporting Facts:_____

8   _____

9   _____

10  _____

11         Claim Two:_____

12  _____

13         Supporting Facts:_____

14  _____

15  _____

16  _____

17         Claim Three:_____

18  _____

19         Supporting Facts:_____

20  _____

21  _____

22  _____

23         If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25  ____ All issues presented herein are fully exhausted._____

26  _____

27  _____

28  _____

PET. FOR WRIT OF HAB. CORPUS        - 6 -

1    List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3    of these cases:

4    Martin v. Marshall (N.D. Cal. 2006) 431 F.Supp.2d 1038

5    Rosenkrantz v. Marshall (C.D. Cal. 2006) 444 F.Supp.2d 1063

6    In re Scott (2005) 133 Cal.App.4th 573

7    Do you have an attorney for this petition?                    Yes____    No_X_

8    If you do, give the name and address of your attorney:

9    _____

10    WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11    this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12

13    Executed on __April 20__ , 2008

14            Date                                    Signature of Petitioner

15

16

17

18

19

20    (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS        - 7 -

ATTACHMENT

Court of Appeal, Second Appellate District, Div. 1 - No. B202757
**S160160**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re PETER HERNANDEZ on Habeas Corpus

The petition for review is denied.

SUPREME COURT
FILED

MAR **1 9** 2008

Frederick K. Ohlrich Clerk

_____
Deputy

GEORGE
_____
Chief Justice

This petition concerns:

- ☐ A conviction                    ☒ Parole
- ☐ A sentence                      ☐ Credits
- ☐ Jail or prison conditions       ☐ Prison discipline
- ☒ Other *(specify)*: state and federal denial of due process and equal protection

1. Your name:            Peter Hernandez

2. Where are you incarcerated?    Correctional Training Facility, Soledad, CA 93960

3. Why are you in custody?    ☒ Criminal Conviction    ☐ Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      Homicide of the first degree, Assault w/intent to commit murder, firearm use

   b. Penal or other code sections:    §§ 187, 217, 12022.5, 1203.06(a)(1) [under P.C. §1168]

   c. Name and location of sentencing or committing court:    L.A. County Superior Court,

      111 N. Hill St., Los Angeles, CA 90012-3014

   d. Case number:        A-334923

   e. Date convicted or committed:    Mar. 9, 1979

   f. Date sentenced:            Mar. 15, 1979

   g. Length of sentence:    Seven (7) years to Life

   h. When do you expect to be released?    Unknown, M.E.P.D.: 9-3-1985

   i. Were you represented by counsel in the trial court?    ☒ Yes.    ☐ No. If yes, state the attorney's name and address:

      Mr. Kenneth Cotton, L.A. County Public Defender,

4. What was the LAST plea you entered? *(check one)*

   ☒ Not guilty    ☐ Guilty    ☐ Nolo Contendere    ☐ Other:

5. If you pleaded not guilty, what kind of trial did you have?

   ☒ Jury    ☐ Judge without a jury    ☐ Submitted on transcript    ☐ Awaiting trial

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

PETITIONER'S FEDERAL AND STATE CONSITUTIONAL RIGHTS TO DUE PROCESS

AND EQUAL PROTECTION WERE VIOLATED BY RESPONDENTS WHEN THEY DENIED

TO HIM THE INDIVIDUALIZED CONSIDERATIONS MANDATED AND REQUIRED BY

STATUTORY AUTHORITIES AND ALL THE CLEARLY ESTABLISHED FEDERAL LAWS

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

In August of 1988 and again in January of 1990, Peter Hernandez,

(Petitioner), was found suitable for parole. Those Grants were sub-

sequently reversed and are attached as Exhibit "A".

On July 13, 2006, Petitioner appeared before the Board of Parole

Hearings (BPH) for his 13th subsequent hearing (14th overall), during

which Mr. J. Davis was Presiding Commissioner and Mr. D. Smith was

Deputy Commissioner. A copy of the Hearing transcript is attached

hereto as Exhibit "B", and incorporated by reference to bolster a

claim of a "no parole" policy and/or practice which has been found

to be patently unconstitutional by numerous state and federal courts.

Petitioner was represented by Ms. K. Rutledge. A staff psy-

chologist, Dr. E.W. Hewchuk, Ph.D., testified utilizing a filed Report

dated: 7-23-04, that in his opinion Petitioner is NOT a risk of CURRENT

(continued on attached pages)

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

(SEE ATTACHED POINTS AND AUTHORITIES)

1    (**continued from previous page**):

2    danger to the public safety. A copy of that Report and Reports from 2004, 2002, 1999 and 1997 are

3    attached as Exhibit "C". A copy of the 2006 Correctional Counselor Level I report was prepared and filed

4    but not cited to and is attached hereto as Exhibit "D".

5            Copies of the 2005 and 2003 Decisions denying parole are attached as Exhibit "E" and are clearly

6    anecdotal evidence to further advance the allegation of a "no parole" policy and/or practice that has been

7    held to be unconstitutional as well as illegal by all courts that have ruled on the subject matter. With the

8

9    Court's leave, Petitioner respectfully requests that this anecdotal evidence be incorporated to this pleading.

10            Also present at the hearing was Mr. P. Turley, deputy district attorney for Los Angeles county,

11    parole division.

12            California's parole statutes and regulations bestow on life prisoners a liberty interest in parole

13    protected by due process. McQuillen v. Duncan (9th Cir. 2002) 306 F.3d 895, 901-903; In re Rosenkrantz[1]

14    (2002) 29 Cal.4th 616, 661 [Rosenkrantz V]. Petitioner's liberty interest required the BPH panel to find him

15    suitable for parole and set his prison term and a parole date because, when his MEPD lapsed, his parole

16    was evaluated to no longer pose an unreasonable risk of danger to society or public safety. (Penal Code

17    (PC) §3041(a); 15 California Code of Regulations (CCR) §§ 2280, 2281(a).)

18            In some cases, a lifer who otherwise qualifies for parole may be found unsuitable for and denied

19    parole if the commitment offense was especially egregious when compared to other instances of the same

20    offense. Such cases, however, are *exceptions*, not per the rule. Accordingly, the conduct of a to-life

21    sentenced inmate who committed first degree murder **must** be especially violent when compared to that of

22    other first-degree murderers for parole to be denied on the basis of the offense in the case of an otherwise

23    qualified inmate. However, the offense cannot serve as a basis for denying parole interminably. In re

24    Ramirez (2001) 94 Cal.App.4th 549, 569-570; Rosenkrantz II, 658; (cf: Biggs v. Terhune   (9th Cir. 2003) 34

25

26

27

28    [1] There have seven (7) "Rosenkrantz" decisions: People v. Rosenkrantz (1988) 198 Cal.App.3d 1187; In re Rosenkrantz (2000) 80 Cal.App.4th 409; Davis v. Superior Court (2-22-01, B146421 [non-pub.]; In re Rosenkrantz (2002) 95 Cal.App.4th 358; In re Rosenkrantz (2002) 29 Cal.4th 616; In re Rosenkrantz L.A. County Sup.Ct. no. BH003529, filed 6-26-2006 ;Rosenkrantz v. Marshall (2006) 444 F.Supp.2d 1063.

A

In re: Peter Hernandez, on habeas corpus

1  F.3d 910); Irons v. Warden (E.D. Cal. 2005) 358 F.Supp.2d 936; Martin v. Marshall (N.D. Cal. 2006) 431

2  F.Supp.2d 1038 (Martin I); In re Rosenkrantz (C.D. Cal. 2006) 444 F.Supp.2d 1063, 1081 [Rosenkrantz VII].

3         Substantive due process requires that the grounds set forth by a BPH panel for its decision must be

4  supported by at least some credible, relevant evidence in the record.  The panel was required to base its

5  findings on a weighing of all relevant, reliable evidence. (15 CCR § 2281(b); In re Minnis (1972) 7 Cal.3d

6  639, 646; In re Rosenkrantz (2000) 80 Cal.App.4[th] 409, 424-427 (Rosenkrantz I); Rosenkrantz II, 655;

7  Ramirez, supra, 566. The "some evidence" standard is satisfied if there is reliable evidence in the record that

8  could support the conclusion reached. Powell v. Gomez (9th Cir. 1994) 33 F.3d 39, 40; Cato v. Rushen (9th

9  Cir. 1987) 824 F.2d 703, 705. And federal due process requires *substantial* evidence having indicia of

10 reliability Jancsek v. Oregon Bd. Of Parole (9th Cir. 1987) 833 F.2d 1389, 1390; In re Powell (1988) 45

11 Cal.3d 894, 904; In re Rosenkrantz II, 658; McQuillen, supra, 306; Biggs, supra, 915; Caswell v. Calderon

12 (9th Cir.2004) 363 F.3d 832, 839.

13        Black's Law Dictionary 5th Ed. 1979 defines SUBSTANTIAL EVIDENCE as follows: "Such
          evidence that a reasonable mind might accept as adequate to support a conclusion. *It is that*
14        *quality of evidence necessary for a court to affirm a decision of an administrative board.*
          (Black's p. 1281, citing State v. Green (1974) 544 P. 2d 356, 362. Emphasis added.)
15

16        The Due Process clause of the Fourteenth Amendment prohibits state action that deprives a

17 person of life, liberty, or property without due process of law. A person alleging a due process violation

18 must first demonstrate that he or she was deprived of a liberty or property interest protected by the Due

19 Process Clause, and then show that the procedures that led to the deprivation were constitutionally

20 insufficient. Kentucky Dept. of Corrections v. Thompson (1989) 490 U.S. 454; McQuillen, supra, 900.

21        In the parole context, a prisoner alleging a due process claim must demonstrate the existence of a

22 protected liberty interest in parole, and the denial of one or more of the procedural protections that must be

23 afforded when a prisoner has a liberty interest in parole. The Supreme Court held in 1979, and reiterated in

24 1987, that "a state's statutory scheme, if it uses mandatory language, creates a presumption that parole

25 release will be granted when or unless certain designated findings are made, and thereby gives rise to a

26 constitutional liberty interest." McQuillen, supra, 901 (citing Greenholtz v. Nebraska Penal Inmates (1979)

27 442 U.S. 1, 7 and Board of Pardons v. Allen (1987) 482 U.S. 369, 373. Because no evidence supported the

28 panel member's finding that Petitioner's parole poses an "unreasonable risk of danger to society" or to

B

In re: Peter Hernandez, on habeas corpus

1  "public safety," and the finding was inapposite to the record, parole denial on that basis subverted due

2  process.

3  　　　The reason stated by the panel for finding Petitioner unsuitable was BPH's boilerplate statement that

4  his parole "would pose an unreasonable risk of danger to society or a threat to public safety." (Exhibit "A", p.

5  70,) the sole ground set forth by the panel in support of its Decision to AGAIN, for at least the fourteenth

6  (14th) time, deny suitability and dismiss his warrant of parole which is tremendously long overdue!

7  　　　(His M.E.P.D. was on the 9th of September, *1985*!!)

8  　　　Parole denial based on the "unreasonable risk" subterfuge abandoned principles of independence

9  and abrogated due process because it is supported by **NO** EVIDENCE  whatsoever. **All** of the competent,

10 professionally-sanctioned evidence that addresses Petitioner's current **and** future dangerousness, parole

11 risk, etc., found it to be "low," "below average," or "no more than the average citizen," nor has it been for over

12 a score years. (See Exhibit "C", throughout, Exhibit "A", at pp. 45-46.)

13 　　　Utilizing the legal precedent established as the focal criteria, all relevant, reliable evidence in

14 Petitioner's records that addresses his dangerousness and parole "risk" all assess these factors to be low,

15 and because not a scintilla of reliable, relevant evidence supports the panel's flawed findings, the sole

16 relevant reason for finding him unsuitable for parole sensibly suggests this was an illegitimate (ongoing)

17 basis for denial. Martin v. Marshall (N.D. Cal. 2006) 448 F.Supp.2d 1143, (Martin II), et al.

18 　　　In Martin, supra, Justice Patel found NO justification for the panel's boilerplate lack of individual

19 consideration and in her July 21, 2006 Memorandum and Order she stated:

20 　　　"In light of the Board's apparent abandonment of its independent role

21 　　　**—which occurred AFTER Governor Schwarzenegger took office,**

22 　　　*the court finds that a remand would indeed be futile.*" There can be no question but that the

23 implication here is exactly what it means: NO INDEPENDENT PAROLE DECISION BY THE WILSON,

24 DAVIS, OR SCHWARZENEGGER regimes for this Petitioner. Id. at p. 1144. (Emphasis added.)

25 　　　In Rosenkrantz II, supra, at p. 655, the Supreme Court explained that parole release decisions

26 "entail the [BPH]'s attempt to predict by subjective analysis whether the inmate will be able to live in society

27 without committing additional antisocial acts."

28 　　　Such a prediction requires analysis of individualized factors on a case-by-case basis and the BPH's

C

In re: Peter Hernandez, on habeas corpus

1   discretion in that regard is almost but NOT unlimited. Further, regardless of the tenet that the BPH's

2   discretion is exceedingly broad, it is circumscribed by the requirements of procedural due process.

3   (Rosenkrantz, id., Calif. Const. article I, § 7(a), and statutory directives.)

4       Absent reliable evidence of the presence of unsuitability factors, there must be some relevant,

5   reliable evidence that a petitioner is otherwise unsuitable for parole, such as by his having failed to meet the

6   suitability criteria under 15 CCR § 2402, subd. (d); §§ 1-4, 6-9. And, while the BPH has exceedingly broad

7   discretion in its parole decisions, the Findings must reflect "an individualized consideration of the specified

8   criteria and cannot be arbitrary or capricious." Rosenkrantz V, supra, 677; "[t]he liberty interest is created,

9   not upon the grant of a parole date, but upon the incarceration of the inmate." Biggs, supra, p. 914.

10      The failure to properly consider the post-incarceration factors highlights the inherent

11  misunderstanding and application of the "some evidence" standard and triggers the required scope of

12  judicial review of the federal questions presented here.

13      There are two sets of parole criteria regulations, not one. 15 CCR §§ 2402, subd. (c) [Circumstances

14  Tending To Show Unsuitability], and 2402 subd. (d) [Circumstances Tending To Show Suitability]. It appears

15  that the BPH's focused emphasis has been on, and remains on, subdivision (c), with little or no regard given

16  to subdivision (d). Petitioner asserts, as a matter of statutory construction, the "public safety" concern in PC

17  § 3041(b), demands an equal (or neutral) emphasis at the outset of a panel's deliberations AND on its

18  Findings under both sets of criteria and any balanced and reasonable interpretation should compel this

19  approach throughout the entire process due any inmate and to do so would virtually assure a Finding of

20  suitability.

21      Factors TENDING to show suitability or unsuitability must be weighed and balanced within the

22  parameters of a standard of proof. Without this critical, reliable component, the process is inherently

23  arbitrary, capricious, and defective. This standardless analysis would vitiate the individualized consideration

24  held appropriate in Rosenkrantz II. The crux of the matter is that of a standard of proof with indicia of

25  reliability as set forth below and reinforced with significant legal precedent.

26      The "some evidence" standard is NOT the sole standard of evidence to be applied to the BPH's

27  decisions. It is only one aspect of judicial review employed by a habeas court. Edwards v. Balisok (1997)

28  520 U.S. 640, 647. And, if the Rosenkrantz II decision implies, as it does, that the "some evidence" standard

D

In re: Peter Hernandez, on habeas corpus

1 | should be applied to the BPH Findings, then this is a clear and unreasonable application of well-established

2 | federal Constitutional law set forth by the High Court. Nothing in Superintendent v. Hill (1985) (Hill) 472 U.S.

3 | 445, 456, implies that it IS A STANDARD OF EVIDENCE to be applied by any agency, board, or executive

4 | body outside a disciplinary committee within an exigent-circumstances prison setting that has no pressing

5 | need for more formal evidentiary standards or anything warranting standardless precedents

6 | What IS implied by the Rosenkrantz II court, when it held that a habeas court can't reverse a

7 | decision denying parole even if it determines that the evidence overwhelmingly preponderates towards a

8 | finding of suitability is completely unreasonable because it prevents effective habeas relief from an arbitrary

9 | and capricious decision, and worse, stymies effective judicial review. This court is not obliged nor compelled

10 | to defer to a state decision misapplying federal constitutional principles. Hubbart v. Knapp (9th Cir. 2004) 379

11 | F.3d 773, 780; referencing Mullaney v. Wilbur 421 U.S. 684, 691; see also Peltier v. Wright (9th Cir. 1994) 15

12 | F.3d 860, 862.

13 | In Oxborrow v. Eikenberry (9th Cir. 1989) 877 F.2d 1395, 1399, the Circuit held that: "Our deference

14 | to the [state court] is suspended only upon a finding that the court's interpretation of [state law] is untenable

15 | or amounts to a subterfuge to avoid federal review of a constitutional violation." Thus, it is petitioner's

16 | contention that respondents seek to avoid federal review by asserting that the "some evidence" standard 1)

17 | is applied by the BPH and/or, 2) limits judicial review ONLY to the BPH's ultimate decision and not to a

18 | finding of a defective pre-Decision process.

19 | If Petitioner were the beneficiary of an individualized consideration utilizing real evidence with

20 | reliable, articulable proof, it would have logically flowed that he is now MORE suitable than his previous

21 | hearings wherein he was found suitable. (Exhibit "A"). All those laudatory words at his Hearing would have

22 | had a consistent ring of truth to them in that he has progressed towards a more-suitable mien, not the

23 | reverse. This highly illegal "boilerplate" denial now rises to the level of a federal due process violation. Biggs,

24 | supra, 916-917; Martin, supra, 1046-1048.

25 | The High Court in Greenholtz (at p. 7) Allen (at p. 373) , supra, established that:

26 | "While there is no constitutional or inherent right of a convicted person to be conditionally
released before the expiration of a valid sentence, a state's statutory scheme, if it uses
27 | mandatory language, creates a presumption that parole release will be granted when or
unless certain designated findings are made, and thereby gives rise to a constitutional
28 | liberty interest." (citing McQuillen, supra, at 901.)

E

In re: Peter Hernandez, on habeas corpus

1        In the absence of any evidence in the record supporting the BPH's decision, remanding the case

2    back to be reheard is a futile act, and the appropriate remedy is release of the Petitioner. McQuillen II,

3    supra, p. 1015-15; Martin II, supra, 1144-45; Rosenkrantz VII, supra, 1087.

4        A petitioner is entitled to "something more than mere pro forma consideration.", e.g. meaningful

5    individual consideration. Not a sham hearing using rote words and repeating boilerplate from a pre-printed

6    form. The only mandate "normally" being followed under P.C. § 3041 (a), is a multi-year denial under § 3041

7    (b) to "swallow" the due process required under the 14th Amendment, an ingestion violating the equal

8    protection guarantees and abridges Petitioner's civil rights under both state and federal Constitution's

9    proscription against this tactic for all similarly-situated inmates. In re Sturm (1974) 11 Cal.3d 258, 268;

10   Ramirez, supra, at 570; Rosenkrantz V, at pp. 658, 683:

> "Judicial oversight must be extensive enough to protect the limited right of parole applicants
> "'to be free from an arbitrary parole decision ... and to something more than mere pro forma
> consideration.'" [citation omitted] The courts may properly determine whether the [BPH]'s
> handling of parole applications is consistent with the parole policies established by the
> Legislature. [ ] while courts must give great weight to the [BPH]'s interpretation of the parole
> statutes and regulations, final responsibility for interpreting the law rests with the courts. [ ]
> Courts must not second-guess the [BPH]'s evidentiary findings [ ] However, it is the proper
> function of judicial review to ensure that the [BPH] has honored in a "'practical sense'" the
> applicant's right to "'due consideration.'"" [ ] Ramirez supra, at 564.

16       Since it is clear that parole should be the rule and not the exception, a moderate or average risk

17   cannot be construed as "unreasonable." Were an average risk grounds for parole denial, then the exception

18   would "operate so as to swallow the rule that parole is 'normally' to be granted.

> "All violent crime demonstrates the perpetrator's potential for posing a grave risk to public
> safety ... {However] the [BPH] "'shall normally set a release date.'" [citation omitted] The
> [BPH]'s authority to make an exception ... should not operate to swallow the rule that parole
> is 'normally' to be granted. ...Therefore, a life term offense must be *particularly egregious* to
> justify the denial of a parole date. In order to comply with the parole policy established by
> the Legislature in P.C. § 3041, the [BPH] must weigh the inmate's criminal conduct not
> against ordinary social norms, but against other instances of the same crime or crimes."
> (Ramirez, supra, at 570, disapproved on other grounds, Emphasis added as usual in
> published cases.)

24       The applicability of this standard to the review of decisions applies and Petitioner's right to

25   due consideration does not appear to have been honored in any practical sense by the panel in this case

26   and their Decision is facially and legally deficient. In the instant case the BPH made no effort to comply with

27   the controlling rules and seems to have merely stated its "predetermined conclusion." (See: In re Caswell

28

F

1  (2001) 94 Cal.App.4th 1017, 1030.)

2      In In re Smith (2003) (Smith II) 114 Cal.App.4[th] 343, 369, the Sixth District Court of Appeals found
3  that there was not some evidence that Smith's crime was more callous than the average for this type of
4  crime. There was nothing to "distinguish th[e] crime from other [serious] murders [involving a gun] ... the
5  record provides no reasonable grounds to reject, or even challenge, the findings and conclusions of the
6  psychologist and counselor[s] concerning [his] dangerousness."

7      Surely the same must appear to be true here. (See Exhibits "C" and 2004 Correctional Counselor's
8  Report, Exhibit "F", attached.) The Second District Court of Appeals, in the case of another life-term inmate
9  named Smith similarly found no evidence to support a parole denial based on the commitment offense. In re
10  Smith (2003) (Smith I) 109 Cal.App.4[th] 489.

11      Compare In re Scott (2004) 119 Cal.App.4[th] 871, 876-877 [Scott I], where the First District reversed
12  the BPH's standard statement of reliance on the gravity of the crime because in truth, "the relevant evidence
13  show[ed] no more callous disregard for human suffering than is shown by most [ ] murder offenses.
14  (Governor's rescission of Scott's parole unanimously reversed on 10-18-05, see: In re Scott 133 Cal.App.4[th]
15  538, Scott II.)

16      On 5-18-05, in Coleman v. BPT (E.D. Cal. No. 97-0783), Honorable Judge L. Karlton
17  adopted the Findings and Recommendations IN FULL. There, it was found that ex-governors Davis and
18  Wilson (and NOW Governor Schwarzenegger, too. See infra at p. C), had/have panels with a sub rosa "no
19  parole" policy and were/are carrying it out. Martin I supra, 1048-49, Martin II, supra, 1144; see Coleman and
20  Final Order, attached as Exhibit "G".

21      It is beyond debate that neither a state agency interpreting an enabling statute nor any court of the
22  state can construe a statute contrary to Legislative intent or the ordinary meaning of the words used in a
23  statute. Our Court, in the entire history of the statute, has never construed it with any adequacy according to
24  the plain meaning to create guidance and instill compliance by both the BPH panels and those who serve
25  the governors otherwise.

26      Instead, this lack of judicial construction has led to the many years of overwhelming denials that DO
27  NOT reflect in any clear way the presumptions of § 3041. Nor does it reflect instruction as to what the
28  agency's burden of proof is or the legal significance of relevant, reliable, or material evidence. This lack of

G

1   judicial guidance has left unfettered discretion in the hands of lay appointees to determine the legal import of

2   evidence (or lack thereof) although these persons are arguably unqualified by a dearth of professional

3   standing to make these determinations upon which a federal liberty interest depends.

4       Determining the legality and weight and of evidence requires some specific legal training in

5   evidentiary law; not by lay persons, and which lack of training is visibly evident in the incongruously

6   inapposite findings thus made. (McQuillen I, supra, 907-912; Rosenkrantz II, supra, 680; Rosenkrantz I,

7   supra, 424-426; Smith II, supra, 361; Smith I, supra, 501-506.) These are only a few of the published cases

8   but unpublished absurdities exponentially abound!

9       The Sixth district held for the proposition in Smith II at 361 that "[t]he weight given the specified

10  factors relevant to parole suitability lies within the discretion of the BP[H]."; a court's determination "of

11  whether the *preponderance of the evidence* supports a finding of suitability is irrelevant." (Emphasis added.)

12  This is the first time a published decision on the BPH has even mentioned a burden of proof. This reference

13  infers the BPH must honor this evidentiary standard as faithfully to the letter as legally possible.

14      Yet there is no settled bright line rule for a court to determine if the BPH has met that standard.  Just

15  the opposite, in fact, since Smith II strongly suggests that even if a reviewing court finds the agency did not

16  meet the standard, an allegation of "some evidence" is sufficient to automatically require judicial deference.

17      The Third District Court of Appeals stated the following as fact:

18  "It is without doubt that a blanket no-parole policy would be contrary to the law, which
    contemplates that persons convicted of murder without special circumstances may eventually

19  become suitable for parole and that, when eligible, they should be considered on an
    individualized basis. Thus, blanket policies have long been deemed to be improper. ¶ In

20  Roberts v. Duffy (1914) 167 Cal. 629, a decision that predates the enactment of our state's
    old indeterminate sentencing law, the Court condemned a blanket parole policy that was

21  contrary to the statutory parole scheme then in place. It appeared that the statutory law
    *allowed a prisoner to apply for parole after serving ONE YEAR* but that, **contrary to the**

22  **statute, the parole authority adopted a rule precluding application until one-half the**
    **sentence was served.**

23      The Court held that, '"while the prisoner had no right to apply to release on parole at

24  any time, *he was entitled to apply* and have his application duly considered on an
    individualized basis."' Id. at 640-641.

25      (Does this sound familiar? Emphasis added to original citation.)

26

27  "With respect to persons sentenced to indeterminate terms, the purpose of punish-ment is
    satisfied by the requirement of service of a minimum period before eligibility for parole and,
    when suitable for parole, by determination of a release date **in a manner that will provide**

28

H

1    UNIFORM TERMS for offenses of similar gravity and magnitude with respect to their threat to
2    the public." (P.C. §§ 3041, 3041(a), 3041.5, citing In re Morrall (2002) 102 Cal.App.4th 280, 291-292.)

3    The arbitrary or capricious misapplication of statutory law violates both state and federal due
4    process. Hill, supra, at p. 428; Gordon v. Duran (9th Cir. 1990) 895 F.2d 610, 613; In re Edsel P. (1985) 165
5    Cal.App.3d 763, 779. "The touchstone of due process is protection of the individual against [the] arbitrary
6    action of government." Wolff v. McDonnell (1974) 418 U.S. 539, 558.)

7    These principles apply in equal force to incarcerated prisoners. (In re Jones (1962) 57 Cal.2d 860,
8    862; ["a convicted felon, although civilly dead, is nevertheless a 'person' entitled to protection of the 14th
9    Amendment."]; In re Price (1979) 24 Cal.3d 448, 453 [acknowledging that P.C. § 2600 limits a prisoner's
10   deprivation to only such rights "as is necessary in order to provide for the reasonable security of the
11   institution in which he is confined."].)

12   In interpreting a prisoner's rights of substantive due process the High Court has held that a prisoner
13   may derive a due process liberty interest from administrative regulations, as well as state law and the U.S.
14   Constitution. Sandin v. Conner (1995) 515 U.S. 472, 484; Hewitt v. Helms 459 U.S. 460, 469, receded from
15   on p. 484, fn. 5; Meachum v. Fano (1976) 427 U.S. 215, 226; Wolff, supra, at p. 557. In applying these
16   standards here, the BPH violated Petitioner's right to constitutional due process but he is not challenging the
17   BPH's right to conduct professional psychological assessments as the main focus of the parole evaluation
18   process, but does challenge their "normal" practice of summarily dismissing and patently ignoring their own
19   experts.

20   Predictions of future conduct necessarily relate to public safety concerns but Judge Karlton in Irons
21   v. Warden (E.D. Cal. 2004) 358 F.Supp.2d 936 (9th Cir. Review pending, filed on 5-18-05, No. 05-15275),
22   discussed this conundrum and noted that the propensity analysis thusly:

23       "To a point, it is true, the circumstances of the crime and motivation for it may indicate a
         petitioner's instability, cruelty, impulsiveness, violent tendencies and the like. However,
24       after 15 or so years in the cauldron of prison life, not exactly an ideal therapeutic
         environment to say the least, and after repeated demonstrations that despite recognized
25       hardships of prison, [petitioner] does not possess these attributes, the predictive ability of
         the circumstances of the crime is near zero." [2]

26

27   [2] "It is worth noting, as has our [Calif.] Supreme Court (People v. Murtishaw (1981) 29 Cal.3d 733, 768, disapproved on other grounds in People v. Boyd
     (1985) 38 Cal.3d 762., that a large number of legal and scientific authorities believe that, even where the passage of time is not a factor and the
28   assessment is made by an expert, predictions of future dangerousness are exceedingly unreli- able. (See, e.g., Monahan, Violence Risk Assessment:
     Scientific Validity and Evidentiary Admisibility, 57 Wash. & Lee' L. Rev. 901 (2000); Otto, On the Ability of Mental Health Professionals to 'Predict
     Dangerousness,' 18 Law & Psychol. Rev. 43 (1994); Lidz, et al., The Accuracy of Predictions of Violence to Others, 269, Jour.Am.Med.Assn. 1007 (1993);
     Diamond, The Psychiatric Prediction of Dangerousness, 123 Pa.L.Rev. 439 (1974); Dershowitz, The Law of Dangerousness: Some Fictions About

1  (Irons, supra, at p. 947, fn. 2, this 'dicta' was also cited as Headnote #10 at p. 937; see additional discussion
2  of "need for more therapy" used as a ruse to deny suitability at p. 948.)

3      P.C. § 3041(a) governs parole suitability determination processes and does not define more than
4  one class of persons. The statute generalizes that it's focus is "any prisoner" who is serving an
5  indeterminate term. Through application, however, the agency's discrimination amongst the class serving
6  indeterminate sentences is in violation of the right to equal protection ensconced in the Fourteenth
7  Amendment. Equal protection is "[in essence] a direction that [a person] similarly situated should be treated
8  alike." (City of Cleburne v. Cleburne Living Ctr. (1985) 473 U.S. 432, 439, citing Plyler v. Doe (1982) 457
9  U.S. 202, 216, "To state a claim ... for violation of the Equal Protection Clause of the 14th Amendment a
10  plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff
11  based upon membership in a protected class." Barren v. Harrington (9th Cir. 1998) 152 F.3d 1193, 1194,
12  cert. denied 525 U.S. 1154 (1999).)

13      Strict scrutiny, alternatively, is utilized if the government distributes benefits or burdens in a manner
14  inconsistent with fundamental rights. (See Sosna v. Iowa (1975) 419 U.S. 393; Shapiro v. Thompson (1969)
15  394 U.S. 618.) The fundamental right here is the due process right to relevant, reliable evidence being
16  considered when analyzing a right to release on parole. McQuillen I, supra, at 900; McQuillen II, supra, at
17  1012; Martin I , supra, at 1043: ("[T]he deferential 'some evidence' standard has outer limits. [citing
18  Coleman, supra,  with approval slip op. at 9] If it is established that a particular judgment was
19  predetermined, then a prisoner's due process rights will have been violated even if there is 'some evidence'
20  to support the decision. [See Bakalis v. Golembeski (7th Cir. 1994) 35 F.3d 318, 326] (a decision-making
21  "body that has prejudged the outcome cannot render a decision that comports with due process. ... The
22  California Supreme Court has explicitly stated that a blanket no-parole policy as to a certain category of
23  prisoners is illegal. [In re Minnis; In re Morrall] " ... Because petitioner cannot change the past, denying
24  [P]etitioner parole based only on the facts surrounding the crime itself effectively changes his sentence ...

25

26  Predictions (1970) 23 J. Legal Ed. 24. According to a Task Force of the American Psychiatric Assn., "[n]either psychiatrists nor anyone else have
   demonstrated an ability to predict future violence or dangerousness. (Am.Psych.Assn., Task Force Rpt. 8, Clinical Aspect of the Violent Individual (1974) at
   p. 28.) As our [Calif.] Supreme Court has also noted, "the same studies which proved the inaccuracy of psychiatric predictions [of dangerousness] have
27  demonstrated BEYOND DISPUTE the no less disturbing manner in which such prophecies consistently err: they predict acts of violence which will not take
   place ('false positives'', thus branding as 'dangerous' many persons who are in reality totally harmless. [citation.]" (People v. Burnick (1975) 14 Cal.3d 306,
   327.) (all emphasis in original). (See: copy of Order denying Review, dated 11/30/05, Daily Journal 12/2/05, p. 13803, attached as Exhibit "B"). Scott, II,
28  supra, footnote #9.

J

In re: Peter Hernandez, on habeas corpus

1    into life imprisonment without the possibility of parole." Ibid. at 1046.) (cf: Martin II, supra, at 1144: "In sum,

2    the Board appears to have capitulated to the blanket no-parole policy described by this court in its previous

3    [Martin I] Order, abandoning its role as an independent assessor of petitioner's eligibility. This capitulation is

4    particularly troubling in light of the Board' vigorous assertions of independence during the 2003 hearing."

5    This Honorable Court should grant the writ and Order all appropriate relief including a complete discharge

6    from custody and sanction full redress for Petitioner.

## CONCLUSION

10    WHEREFORE, Petitioner respectfully submits that the writ should be granted in full and all available

11    remedies leading to his immediate release from custody be Ordered at the earliest possible moment and

12    forthwith. It is respectfully requested that an evidentiary hearing be Ordered as an alternative to the above

13    should there be consideration of the "no parole" policy and/or practice by this previous administration.

K

In re: Peter Hernandez, on habeas corpus

7   Ground 2 or Ground _____ (if applicable)

PETITIONER'S FEDERAL RIGHTS TO DUE PROCESS AND EQUAL PROTECTIONS WERE
VIOLATED WHEN RESPONDENTS UTILIZED A LESSER STANDARD OF LEGAL PROOF
REQUIRING EVIDENCE WITH SOME INDICIA OF RELIABILITY TO FIND THAT PETI-
TONER IS UNSUITABLE TO PAROLE AND IS THEREFORE AN UNREASONABLE RISK

a   Supporting facts:

Nowhere is there any codification that avers petitioners must
prove his or her suitability. Only if an inmate is found unsuitable
does evidence become citable. (See Dannenberg, at 1095; Rosenkrantz
at 658, 683.) Evidence must be specific, articulable, and have "some
indicia of reliability." Respondents have the burden of proof to
demonstrate, in the Record, why an inmate is not suitable and a
denial of more than one year requires that the BPH panel state for
the Record why it isn't likely that petitioners would be found suit-
able any time sooner. There is a wholesale vitiation going on here.

Procedural safeguards require: a hearing one year prior to
the MEPD, CCR §§2268(b)[2400 et sqq.], 2270(d), (e), (f); PC §3041
(a), CDC v. Morales (1995) 115 S.Ct. 1597, 1600; service and prior
examination of all material considered; representation if desired.

The one-year lead on a MEPD imparts that the Legislature
intended that some inmates will be suitable at an initial hearing
otherwise why would such a gratuitous mandate exist? Govenor's-
level review presumes a neutral, well-defined, professional body
that will follow all the state and federal laws. Only this practice

(continued on attached pages)

b.  Supporting cases, rules, or other authority:

(SEE ATTACHED POINTS AND AUTHORITIES)

1  Ground 2, continued:

2  would meet the constitutional burden under the discretionary methods

3  needed to quickly resolve an uncertain matter.

4      The "some evidence" relied on to deny parole must be relevant

5  and reliable in establishing Petitioner is a <u>current</u>, unreasonable

6  threat to public safety and must not be grounded in an incomplete

7  or unreasonable assessment of the relevant factors.

8      In explaining what the "some evidence" standard meant, the

9  Court in <u>In re Rosenkrantz</u> (2002) 29 Cal.4th 616 at 677, stated

10 that "[o]nly a modicum of evidence is required." On its face, this

11 standard could thus be seen as remarkably broad--that a scintilla

12 of evidence (or the BPH's assessment of it)--would be enough to

13 completely immunize BPH decisions from judicial review. However,

14 such a reading would effectively serve to nullify the <u>Rosenkrantz</u>

15 court's holding rejecting the Executive's position that factual

16 decisions rejecting parole were immune from examination by the courts

17 and in point of fact were required.

18      A disection of the "some evidence" standard itself--both

19 conceptually and through a review of the application of the

20 <u>Rosenkrantz</u>' standard (and its progeny)--makes clear that this is

21 the meaningful standard. Properly understood, it strikes an

22 appropriate balance between judicial deference to difficult BPH

23 decisions and the protection of constitutional liberty interests.

24      The "some evidence" standard of review is laid out here:

25      "[W]e conclude that the judicial branch is authorized
        to review the factual basis of a decision of the [BPH]
26      denying parole in order to ensure that the decison comports
        with the requirements of due process of law, but that
27      in conducting such a review, the court may inquire only
        whether some evidence in the record before the [BPH] sup-
28      ports the decision to deny parole, <u>based upon the factors</u>

                                4-A

specified by statute and regulation. Rosenkrantz, 658. "[a]s long as the [BPH] decision reflects due consideration of the specified factors as applied to the INDIVIDUAL PRISONER in accordance with applicable legal standards, the court's review is limited to ascertaining whether there is some evidence in the record that supports the [BPH] decision." Id. at 677. (emphasis added).

Thus, the inquiry into whether there is "some evidence" is more complex than it might otherwise seem, as the standard MUST be applied within the context of the statutory framework in which it arises. This framework imposes at least 3 requirements on the "some evidence" standard if it is used to deny parole.

First, the BPH must base their decisons only on evidence that serves to establish that the inmate will or will not pose a continuing, "unreasonable risk of danger to society if relesed from prison." CCR, title 15, §2402(a), and PC §3041(b).

Second, the evidentiary basis for parole decisions must be based on the factors specified in the regulations after individualized considerations of all of the factors. Rosenkrantz at 677 ("The precise manner in which the specified factors relevant to parole suitability are considered and balanced lies within the discretion of the [executive branch], but the decision must reflect an individualized consideration of the specified criteria and CANNOT BE ARBITRARY AND CAPRICIOUS."); see also In re Stanley (1976) 54 Cal.App.3d 1030, 1038 n.7 ("Other courts place more weight on the prisoner's record of crime. We abstain from any argument over the relative primacy of various parole factors. It is enough to say that the Adult Authority must apply all the factors.") (citing In re Minnis (1972) 7 Cal.3d 639). These factors naturally all relate to whether the inmate poses a continuing, unreasonable risk of danger to society if released from prison. (emphasis added).

1   Third, the evidence upon which the BPH relies must be relevant

2   and reliable. CCR §2402(b) ("All relevant, reliable information

3   available to the panel shall be considered in determining suitability

4   for parole.") (cf. CCR §§2402(d)(1-9).

5   In sum, a court examining parole decisions must determine

6   whether, after all consideration of all the factors enumerated in

7   the statute and regulations, the decison was based on: 1) some

8   evidence; 2) a reasonabe consideration of all the factors specified

9   by the statutory guidelines; 3) evidence that is both relevant and

10   reliable; and 4) factual determinations that suggest an inmate poses

11   a CURRENT, UNREASONABLE THREAT TO PUBLIC SAFETY.

12   A review of the post-Rosenkrantz legal panorama reveals that

13   California courts of appeals and federal courts have routinely

14   applied the above boundaries and checkpoints of relevance,

15   reliability and reasonableness to the "some evidence" standard.

16   The California Supreme Court has so far utterly failed to establish

17   a brightline Plimsoll mark to define the full depth of the inquiry.

18   The courts continue to assess the reasonableness of the BPH's

19   interpretation of the facts and circumstances used to legally sus-

20   tain a finding of parole suitability denial. The court in In re

21   Van Houten (2004) 116 Cal.App.4th 339, 356, assessed whether the

22   BPH was reasonably able to conclude that there was some evidence

23   of the inmate's need of continuing therapy and her dangerousnes

24   to the public. Though it found in the affirmative, the court took

25   a close look at whether the BPH "could reasonably conclude that

26   [her] defense, that Manson's influence overwhelmed [her], was

27   exagerated such that she is fully responsible for the LaBianca

28   murders" and whether "[t]he BPH could infer with sufficient

1   reasonableness to satisfy a minimal 'some evidence' standard that

2   [she] is a danger to the public and in need of continued therapy

3   and programming." Her denial was affirmed with instructions.

4         Judicial inquiry into the stated reasons for parole denial

5   have their place and numerous state and federal courts--in a wide

6   range of contexts--have similarly held the judicial inquiry into

7   the reasonableness of BPH determinations and conclusions is

8   appropriate, even when such determinations and conclusions are

9   accorded broad deference. (See, e.g., In re Farley (2003) 109

10  Cal.App.4th 1356, 1361-2: "Judicial review of a CDC custody

11  determination is limited to determining whether the classification

12  decision is arbitrary, capricious, irrational, or an abuse of the

13  discretion granted those given the responsibility for operating

14  prisons. While we must uphold respondent's classification action

15  if it is supported by "some evidence" and we must afford great

16  deference to an administrative agency's expertise, where the agency's

17  interpretation of the regulation is clearly arbitrary or capricious

18  or has no basis, COURTS SHOULD NOT HESITIATE TO REJECT IT."

19        Federal courts likewise require parole decisions to be

20  reasonable. As an example, in a parole rescission case, a federal

21  court in this state held: "the Court of Appeals conclusory findings

22  that there was 'some evidence' to support the rescinding, the BPH's

23  decision that parole was improvidently granted to petitioner are

24  contrary to clearly established federal law and, to the extent they

25  are fact-based, represent unreasonable determinations of the facts

26  in light of the evidence presented in the state court preceedings."

27  Stockton v. Hepburn (N.D Cal. 2005) 2005 U.S. Dist. LEXIS 4877 at

28  43; see also Irons v. Warden (N.D. Cal 2004) 358 F.Supp.2d 936,

1   948 ("Clearly, a conclusion by lay BP[H] commissioners that

2   petitioner has not yet acheived required therapy for insight OR

3   OTHER REASONS is not reasonably sustainable, and a state court's

4   conclusion to the contrary is patently unreasonable.")

5   The federal liberty interest is made an adjunct to the state

6   requirements of due process by and through the 14th Amendment to

7   the U.S. Constitution and the substantial evidence of the federal

8   standard must be overcome to meet federal guarantees to its citizens

9   who, before they became entitled to state civil rights, were first

10  bestowed by operation of their federal citizenship. A state cannot

11  lawfully deny any federal right to its citizens but that is exactly

12  what respondents are demanding of their agents in the BPH, and will

13  no doubt now ask this Honorable Court to signoff on. That must not

14  be allowed if the judiciary is to be truly separated from the

15  Executive charades disguised is a legitimate exercise in freedom.

16  The goal of indeterminate sentences and the parole system is

17  not only to punish, but also to provide for reformation and

18  rehabilitation as the CDC's renaming suggests:

19      "The belief no longer prevails that every offense in
        a like legal category calls for an identical punish-
20      ment without regard to past life and habits of a parti-
        cular offender. ... Retribution is no longer the domi-
21      nant objective of the criminal law. Reformation and
        rehabilitation of offenders have become important goals
22      of criminal jurisprudence."

23  People v. Morse (1964) 60 Cal.2d 631, 643 n.8 (quoting Williams

24  v. State of New York (1949) 337 U.S. 241, 247). In a lengthy discus-

25  sion of this topic, the Supreme Court stated the following:

26      "[T]he purpose of the indeterminate sentence law, like
        other modern laws in relation to the administration
27      of criminal law, is to migitate the punishment which
        would otherwise be imposed upon the offender. These
28      laws place emphasis upon the reformation of the offender.

4-E

> They seek to make the punishment fit the criminal rather
> than the crime. They endeavor to put before the prisoner
> great incentive to well-doing in order that his will
> to do well should be strengthened and confirmed by the
> habit of well-doing. [...] [The] interests of society
> require that under prison discipline every effort should
> be made to produce a reformation of the prisoner. ...
> The legislative policy [was to provide a system whereby]
> a hope was to be held out to prisoners that through
> good conduct in prison and a disposition shown toward
> reformation, they might be permitted a conditional liber-
> ty upon restraint under which they might be restored
> again to society. ... Although good conduct while in-
> carceratd and potential for reform are not the only
> relevant factors, this court has acknowledged their
> significance. Furthermore, the Authority has declared
> that these factors are among those of 'paramount impor-
> tance. In re Minnis, 7 Cal.3d 644-45.

The Rosenkrantz Court, at 656, citing to Minnis, reaffirmed these principles: "[E]ven before factors relevant to parole decisions had been set forth expressly by statute and regulations, we concluded that '[a]ny official or board vested with discretion is under an obligation to consider all relevant factors [], and the [BPH] can't, consistently with its obligation, ignore post-conviction factors UNLESS DIRECTED TO by the Legislature." (citing Minnis at 645; emphasis added for illumination).

Petitioner has a Constitutional liberty interest in parole decisions and "[P]arole applicants in this state have an expectation that they will be granted parole unless the BPH finds, in its reviewable discretion, that they are unsuitable for parole in light of the circumstances specified by statute and regulation." Rosenkrantz at 654 and at 659-61 this liberty interest is an expectation protected by due process of law. (holding that the California Constitution Art. V, §8(b) and PC §3041 "give rise to a protected liberety interest" in that "a prisoner granted parole by the BPH has an expectation that the Governor's decision to affirm

modify, or reverse the BPH's decision will be based upon the same factors the BPH is required to consider," and that "this liberty interest underlying a Governor's parole review decision is protected by due process of law.").

Federal courts have also unequivocally held that California's parole system gives rise to a liberty interest constitutionally protected by due process. See: Allen, infra at 376-78; Greenholtz v. Inmate of Neb. Penal & Corr. Complex (1979) 442 U.S. 1, 11-12 (holding a state's statutory parole scheme that uses mandatory language may create a presumption that parole release will be granted upon certain circumstances or findings, thus giving rise to a constitutionally protected liberty interest); McQuillen, supra at 902-3 n.1 (holding that because parole scheme uses mandatory language and is largely parallel to the schemes found in Allen and Greenholtz do give rise to a protected libety intrest in RELEASE ON PAROLE, "California's parole scheme gives rise to a cognizable liberty interest in release on parole.") Biggs v. Terhune (9th Cir. 2003) 334 F.3d 910, 914-15 (same) and, ("[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate."

Rosenkrantz specifically rejected any position that a court may not properly examine the factual basis of parole decisions at 667, "[W]e conclude that the courts properly can review a Governor's decisions whether to affirm, modify, or reverse a parole decision by the BPH to determine whether they comply with due process of law, and that such review properly can include a determination of whether the factual basis of such a decision is supported by some evidence in the record that was before the BPH.

Post-Rosenkrantz, courts have reaffirmed the concepts of broad executive deference but vigilent judicial review, by engaging careful analysis, will ensure that the boundaries of due process are respected and upheld. "[t]he exceedingly deferential nature of the "some evidence" standard of judicial review set forth in Rosenkrantz does not convert a court reviewing the denial of parole into a potted plant." In re Scott (119 Cal.App.4th 871, 898, recently affirmed).

The Court, in In re Dannenberg (2005) 34 Cal.4th 1061 at 1095 n.16 reaffirmed that effective judicial review is critical to due process. Rejecting the dissent's suggestion that the opinion "permits untethered pro forma parole denials that are insulated from effective judicial review, thus contravening California life inmates' due process rights to individualized parole consideration," the majority made clear that the [BPH] must apply detailed standards in evaluating individual inmates' suitability for parole on public safety grounds, and that the Executive's broad discretion is subject to meaningful judicial oversight.

There is no question that the discretion afforded to the BPH with respect to parole decisions is great. However, the parole system's very purpose is to provide for the reentry into society of inmates who no longer pose a danger or unreasonable threat to public safety, and those rights afforded thereunder are constitutionally protected.

The BPH must abide by due process considerations, and the courts are entrusted with ensuring that such considerations are adequately respected and thus protected. Neither Rosenkrantz or Dannenberg permits respondents to immunize themselves from re-

1   view by unreaonable and possibly unlawful assertion that certain

2   facts support a denial of parole. On the contrary, _Rosenkrantz_

3   and _Dannenberg_ make clear that the courts have a vital and therefore

4   important role to play in ensuring that parole decisions are

5   actually supported by "some evidence" having a basis in fact, and

6   an indicia of reliability supported in the record.

7        Petitioner submits that there is a real danger that, improperly

8   understood, the guidelines articulated in _Rosenkrantz_, _Dannenberg_,

9   and the court of appeals will serve to provide respondents with

10  de facto immunity from judicial review, a result anathema to state

11  and federal due process protections. Properly understood, the "some

12  evidence" standard provides a fair and proper framework for review

13  of parole decisions in any venue, one that provides respondents

14  with an appropriate level of deference in making extremely difficult

15  decisions relating to inmates' liberty interests and public safety

16  concerns, while ensuring that statutory and constitutional liberty

17  interests are being adequately and lawfully safeguarded through

18  judicial review. And, when this standard is properly applied to

19  this case, there should be no doubt but that the BPH's denial of

20  suitability seems unsustainable and must be reversed, a new hearing

21  granted, and an Order with instructions issued.

22       WHEREFORE, Petitioner prays that the writ be granted in full

23  and all available relief be accorded to Petitioner to comply with

24  and comport to the state and federal Constitutions and the legal

25  adversarial process and resolution of a judicious nature in this

26  most important matter herein. Petitioner hereby incorporates by

27  reference, as though fully set forth, all papers, pleadings,

28  transcripts, exhibits and matters of record in the instant matter.

7. Ground 2 or Ground _3_ (if applicable)

PETITIONER HAS A FEDERALLY-COGNIZABLE LIBERTY INTEREST IN RELEASE
TO PAROLE CREATED BY RESPONDENT'S STATUTORY SCHEME AND MANDATORY
LANGUAGE OF THE ENABLING STATUTES THAT REQUIRES A SUITABILITY FINDING
UNDER STATUTORY CRITERIA AND RESPONDENTS' BURDEN IS NOT MET HEREIN

a  Supporting facts:

This petition is intended to give legitimate meaning to petition-
er's seven (7) years-to-Life sentence by seeking an Order in this
Court granting the writ to discharge petitioner from state prison,
or alternatively, compelling the BPH to conduct a new parole
consideration hearing and correctly weight their statutory findings
to view suitability and consequent release to parole for Petitioner.

The issues raised are of constitutional dimension, comporting
to petitioner's federal constitutional rights, and questioning the
legality of petitioner's continued confinement in the face of over-
whelming evidence of legally-sustainable proof of suitability and
unquestioned state-hired professionals and their proffered opinions
of reasonable assurance in adhering to concerns of public safety.

There is NO evidence having indicia of reliability that this
petitioner poses an unreasonable risk of danger to the public and
P.C. §3041(a) and California Code of Regulations (CCR), Title 15,
Division II §§2402(d)(1,2,3,4,6,7,3 & 9) (parole suitability criteria)
all make it clear that there IS A MANDATE, based on a legally-
sufficient standard, and that standard is subject to judicial review
(continued on attached pages)

b. Supporting cases, rules, or other authority:

(SEE ATTACHED POINTS AND AUTHORITIES)

(**continued from previous page**):

for abuse of discretion under a federal due process and equal protection umbrella with safeguards required in a review of the "evidence" of unsuitability that is burdened upon respondents.

The California Supreme Court recognizes that prisoners have procedural due process protections in connection with parole determinations. A legitimate expectancy of release to parole is created by PC § 3041. If the statute creates the legitimate expectancy of parole, it is not legally sufficient to answer that the BPH may, in its broad discretion, deny parole suitability.

This argument, that the BPH's broad discretion swallowed Petitioners liberty interest and expectation of release was squarely rejected by the High court in Allen, supra. Additionally, the Court stated in <u>Rosenkrantz IV</u>: "[P]arole applicants in this state *Have an expectation that they will be granted parole* unless the BP[H] finds in its discretion, that they are unsuitable for parole **in light of the circumstances specified by statute and regulation**." <u>Rosenkrantz V</u>, supra, 29 Cal.4[th] at 654. And, [O]ur past decisions make clear that the ***requirement*** of procedural due process embodied in [Art. I, § 7, subd. (a)], places <u>some limitations</u> upon the broad discretionary authority of the BP[H]." <u>Id</u>. at 655.

Therefore, it is inherently clear that the presence of discretion held by the BPH does not, under either state or federal law, diminish nor extinguish the expectancy of release to parole nor in any ways Petitioner's due process rights. It thus follows that a liberty interest has existed under PC § 3041 that is embodied in, and protected by, the Fourteenth Amendment's Due Process Clause.

Also, CCR regulations use the "shall/unless" language (§§ 2401-2402) and recognize all available rights to Petitioners. Further, these regulations AS ORIGNIALLY WRITTEN, made it even clearer that parole was to normally to be granted. This remained so until political operatives, presumably with a criminal bent, manipulated the executive and legislative branches to repeal this proviso and substitute a "Willie Horton" revision that was never fully explained to the public nor openly voted upon for acceptance and would've probably failed it there had been an honest attempt to do so.

For respondents to abrogate this federal liberty interest they must provide *substantial* relevant, reliable evidence having some indicia of credibility that Petitioner poses a CURRENT ***unreasonable*** threat to the public safety, as noted in <u>In re Lee</u> (10-10-06) Second District Court of Appeals, Division Eight; 49 Cal.Rptr.3[rd] 931,

A

In re: Peter Hernandez, on habeas corpus

1    where the court cautioned:

2    ["The commitment offense can negate suitability [for parole] only if circumstances of the crime ...
     rationally indicate that the offender will present an unreasonable public safety risk if released from
3    prison."] In re Scott (2005) 133 Cal.App.4th 573, 595, [however], In re Lowe (2005) 130 Cal.App.4th
     1405, suggested "'some evidence" applies to the factors, not dangerousness.) Some evidence of
4    the existence of a particular factor does not necessarily equate to some evidence the [inmate's]
     release unreasonably endangers public safety.'" Lee, supra, 936.

5    ¶The board and governor must focus their parole decisions on whether a prisoner
     continues to pose an unreasonable risk to public safety. Such a practical inquiry, rooted in real
6    world crime and law and order, has no obvious intersection with incorporeal realm of legal
     constructs." Id. at 940.

7

8    This is something they have patently failed to do, as testified to by virtually all of their own witnesses as

9    noted in attached Exhibit "C", which has been previously generated BY RESPONDENTS and provided to all

10   concerned parties prior to Petitioner's various hearings and with NO OBJECTIONS from respondents as being

11   accurate and meaningful to ascertain PRESENT DANGEROUSNESS.

12   "Unreasonable risk" evidence that meets the federal level of reliability must be drawn from an

13   individualized analysis of fifteen (15) factors identified by regulations: CCR § 2402(b); Rosenkrantz V at 653-54.

14   "Such information shall include circumstances of the prisoner's social history; past and present mental state; past

15   criminal history; [] the base and other commitment offenses; past and present attitude toward (sic) the crime; any

16   conditions of treatment or control ...; and any other information that bears on the prisoner's suitability for

17   release." (emphasis added.)

18   This extensive list of factors, including other relevant reliable information that must be considered, makes

19   it clear that the Legislature did not intend for any single factor to initially or consis-tently trump all the others. This

20   is exactly what is happening here however. Decision upon decisions by the BPH suggests that their focus is

21   exclusively on the commitment offense, a sub-factor among the total. The BPH insistently attempts to insulate

22   their failure to individually consider circumstances of suitability using makeweight exceptions to state by rote that,

23   'although post-conviction behavior was DULY CONSIDERED, and the inmate is otherwise suitable for release to

24   parole, the offense was so heinous, atrocious, or cruel, that Petitioner is ineligible for a finding of suitability. "The

25   evidence under-lying the BPH's decision must have some indicia of reliability." Jancsek v. Oregon Board of

26   Parole (9th Cir. 1987) 833 F.2d 1389, 1390.

27   The reduction of the parole assessment process to an occluded, myopic pseudo-consideration of the

28                                                          B
     In re: Peter Hernandez, on habeas corpus

1  one factor, and it alone—unerringly as an unwritten but accepted general rule practiced in all circumstances—

2  was never intended by the Legislature and cannot be permitted nor allowed to continue and still comport with

3  Rosenkrantz, Biggs, Martin, Morrall, Irons, Coleman, et cetera. See also: Environmental Defense Center, Inc. v.

4  E.P.A. (2003) 344 f.3D 832, 858, fn. 36, (holding that a federal agency has acted in an arbitrary and capricious

5  fashion, if "the agency has relied on factors that Congress has not intended to consider, entirely failed to

6  consider an important aspect of the problem, and offered no explanation for its decision that runs counter to the

7  evidence before the agency, or is so implausible that it could not be ascribed to a different view or the product of

8  agency expertise."); Arizona Cattlegrower's Ass'n v. U.S. Fish & Wildlife, B.L.M. (9th Cir. 2001) 273 F.3d 1229,

9  1236 (holding judicial review under the "arbitrary and capricious" standard is "meaningless ... unless we carefully

10 review the record to ensure that agency decisions are founded on a reasoned evaluation of the relevant factors

11 ...[;] while reviewing courts should uphold reasonable and defensible constructions of an agency's enabling act,

12 they must not rubber-stamp ... administrative decisions that they deem in-consistent with a or that frustrate the

13 congressional policy underlying a statute.")

14       First degree murder is not a crime that automatically allows one to be deemed unsuitable for release and

15 parole. And, given the above directive in Environmental Defense Center, Inc. v. E.P.A and Arizona

16 Cattlegrower's Ass'n v. U.S. Fish & Wildlife, B.L.M., coupled with Rosenkrantz, Biggs, Martin, Morrall, Irons,

17 Coleman, et al., there must be a base set of factors upon which a first degree murderer would have to be paroled

18 or the BPH would risk violating due process. To determine what would qualify as more than the minimum

19 necessary for a conviction, the courts must first consider what is required, at the minimum, for a conviction of

20 first-degree murder.

21       Now that the crime is defined, the question must be what evidence indicates that any particular first

22 degree murder was somehow "beyond the minimum necessary to sustain a conviction." In sum: what evidence

23 indicates the commitment offense was "*especially* heinous" or "*exceptionally* grave", given that there typically

24 must be a finding of some level of heinousness, callousness, and/or gravity of violence in order for a defendant

25 to have had his first degree murder conviction sustained by the appellate courts in the first place?

26       Two previous panels found Petitioner suitable long ago and the only changes to these original grants has

27 been a continued progress towards maturity, self-awareness, anger management and the kind of programming

28                                                         C

which will assure Petitioner's continued positive behavior and determination and almost certain success as a parolee and valuable contributing member of the community.

The weapon enhancement does not reasonably demonstrate that this crime was "beyond the minimal elements" of a first-degree murder conviction, and is in no way some evidence establishing that he is *currently* an unreasonable threat to public safety. Indeed, if the BPH were to be able to rely on "weapon of choice" evidence in every case, **every** first degree murder would be "beyond the minimal elements" and there would be no way to commit a first degree murder in California that did not qualify as an "especially" heinous crime and thereby justify imprisonment for life, without any chance of parole. This is not what the Legislature wrote the enhancement statutes for nor the intended outcome of any additional punishment attached thereto, and exceeds the bounds of common sense in every conceivable manner.

This rendition illustrates further, the importance (given the short tenure of the suggestion that "some evidence" may be found in facts 'beyond the minimum necessary elements' of the commitment offense) of all courts providing enhanced guidance regarding what set of facts are sufficient to support a denial of parole suitability. Invariably, any such guidance should summarily relate to the relevance of the evidence; whether or not it is substantial for federal due process purposes; its relevance and its reliability; and the reasonableness one should exact in being able to conclude that the evidence sub-stantiates that the inmate is a CURRENT, UNREASONABLE THREAT to the safety and security of the public and the ability to lawfully abide within the community.

Sole reliance on the commitment offense to deny parole not only augurs the serious risk of being arbitrary AND capricious but is almost always counter-instructive. In the parole determination process, the panel is tasked with assuring the Executive branch the parole-worthy inmate was duly considered by determining if the prisoner is a CURRENT threat to the public safety. This determination is, in total, the only decision that the BPH is sanctioned to make by the Penal Code and Regulations codified for that purpose. All interpretations of mitigating and aggravating factors, and the weight given to the special circumstances of the offense, merely go to instruct this final conclusion. "A determination of unsuitability is simply shorthand for a finding that a prisoner CURRENTLY would pose an unreasonable risk of danger if released at this time." Smith, supra, at p. 370, (citing C.C.R. § 2402(d), emphasis added.)

D

In re: Peter Hernandez, on habeas corpus

1    WHEREFORE, Petitioner respectfully submits these issues, arguments and Exhibits and prays this
2  Honorable Court and all Honorable Justices will grant the writ and Order Petitioner's release forth-with. Or, in the
3  alternative, Order a Rehearing within thirty (30) days of the Order with instructions to individualize his complete
4  suitability consideration without bias or political, personal, or tenurial consid-erations, and in accordance with the
5  statutory mandate of P.C. § 3041(a), and any further relief as the Court may deem just and proper to protect
6  Petitioner's civil rights.

7  ///

8  ///

9  ///

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          E
   In re: Peter Hernandez, on habeas corpus

8.  Did you appeal from the conviction, sentence, or commitment?  ☐ Yes.  ☐ No.   If yes, give the following information:
    a.  Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"): _____

    b.  Result: _____ N / A _____  c.  Date of decision: _____

    d.  Case number or citation of opinion, if known: _____

    e.  Issues raised:  (1) _____

        (2) _____

        (3) _____

    f.  Were you represented by counsel on appeal?  ☐ Yes.  ☐ No.  If yes, state the attorney's name and address, if known:

    _____

9.  Did you seek review in the California Supreme Court?  ☐ Yes.  ☐ No.   If yes, give the following information:

    a.  Result: _____ N / A _____  b.  Date of decision: _____

    c.  Case number or citation of opinion, if known: _____

    d.  Issues raised:  (1) _____

        (2) _____

        (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

    _____ THESE ISSUES ARE BEING TIMELY MADE FOR THE FIRST TIME ON THIS APPEAL _____

11. Administrative Review:

    a.  If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

    _____ THERE IS NO ADMINISTRATIVE REMEDY AVAILABLE TO PURSUE _____

    _____

    _____

    _____

    _____

    _____

    _____

    b.  Did you seek the highest level of administrative review available?  ☐ Yes.  ☐ No.
        *Attach documents that show you have exhausted your administrative remedies.*