IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PETER HERNANDEZ,                )   No. C 08-2278 JSW (PR)
                                )
            Petitioner,         )   **ORDER DENYING PETITION**
                                )   **FOR A WRIT OF HABEAS CORPUS**
    vs.                         )   **AND DENYING CERTIFICATE OF**
                                )   **APPEALABILITY**
                                )
BEN CURRY, Warden,              )
                                )
            Respondent.         )
_____    )

## INTRODUCTION

Petitioner, a prisoner of the State of California, has filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 in which he challenges a denial of parole in 2006. This Court ordered Respondent to show cause why a writ should not issue. Respondent filed an answer and a memorandum of points and authorities in support of the answer. He also lodged the record with the court. Petitioner has filed a traverse. For the reasons stated below, the petition is denied on the merits.

## BACKGROUND

Petitioner was convicted of first degree murder in Los Angeles County Superior Court. In 1980 the trial court sentenced him to a term of seven years to life in state prison. In 1988 and 1990 he was found suitable for parole, but those decisions were overturned by the Governor of California. This petition is directed to the denial of parole at his fourteenth hearing, in 2006. Petitioner unsuccessfully challenged the Board's decision at all three levels of the California courts.

**DISCUSSION**

**A.    Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the Petitioner is not challenging his underlying state court conviction." *White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004).  Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at § 2254(d).  Under this deferential standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Id.* at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

**B.    Respondent's Claims**

In order to preserve the issues for appeal, respondent argues that California prisoners have no liberty interest in parole, and that if they do, the only due process

protections available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent contends there is no due process right to have the result supported by sufficient evidence.  Because these contentions are contrary to Ninth Circuit law, they are without merit.  *See Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1128-29 (9th Cir. 2006) (the some evidence standard identified in *Hill* is clearly established federal law in the parole context for purposes of § 2254(d)); *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) ("California's parole scheme gives rise to a cognizable liberty interest in release on parole.").

## C.    Petitioner's Claims

Petitioner claims that the BPT's denial of parole in 2006 was not based on an individualized determination and was not supported by sufficient evidence of his unsuitability.[1]

### 1.    Individualized Consideration

Petitioner contends that his due process rights were violated by the Board's failure to afford him "individualized consideration" – he contends that the Board has a "no parole" policy for prisoners serving life sentences.  The record shows that the Board reviewed the evidence extensively and discussed it with Petitioner and his attorney.  (Pet. Ex. B at 9-69 (hereafter cited as "Hearing Transcript").)  The Board's decision sets out the facts it relied upon in finding him not suitable for parole.  (*Id.* at 70-78.)  Both these

---

[1] Although Petitioner also presented a third claim in his petition, the arguments raised in it are addressed below in the context of the other two claims, to the extent that they are not state law claims that cannot be the basis for federal habeas relief.  For instance, in the third claim Petitioner contends that state regulations were not complied with; such a claim cannot be the basis for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas unavailable for violations of state law or for alleged error in interpretation or application of state law).  His argument that there was "no" evidence to support the denial is subsumed in the "some evidence" issue discussed below, and his contention that he has a liberty interest in parole is accepted in the discussion of respondent's issues, above.

factors tend to negate the accusation of bias, and Petitioner has not provided any evidence that would show otherwise.  The state courts' rejection of this claim was not contrary to, nor an unreasonable application of, clearly established Supreme Court authority.

**2.**     **"Some Evidence" Claim**

Petitioner contends that denial of parole was not supported by "some evidence" and thus violated his due process rights.

Ascertaining whether the some evidence standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455; *Sass*, 461 F.3d at 1128.  The some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

It is now established under California law that the task of the Board of Parole Hearings and the governor is to determine whether the prisoner would be a danger to society if he or she were paroled.  *See In re Lawrence*, 44 Cal. 4th 1181 (2008).  The constitutional "some evidence" requirement therefore is that there be some evidence that the prisoner would be such a danger, not that there be some evidence of one or more of the factors that the regulations list as considerations in deciding whether to grant parole. *Id.* at 1205-06.

Here, the grounds for the denial cited by the Board were that (1) Petitioners's offense was committed in a particularly callous manner; (2) the motive for the crime was trivial in relation to the offense (3) Petitioner had a criminal history that showed a pattern of criminal conduct and a failure to benefit from adult probation; (4) he had received seven counseling memos, the last in December of 2000, and four serious rules violation charges, that last in February of 1998; and (5) his parole plans were not realistic.

1    (Hearing Transcript at 70-72.)

2        The following facts of the offense were read into the record at the hearing:

3            On 4-25-77 at approximately 9:00 p.m. Peter Hernandez and co-
             defendant Jose Montez approached three Mexican-American males in a
4            residential area of Los Angeles.  Following a brief conversation Hernandez
             pulled a gun from his coat, fired a shot at victim Tony Sanchez . . . at point
5            blank range killing him with a shot to the heart.  Victims Rosales and
             Rodriguez . . . ran from the scene, but were pursued by Hernandez who
6            continued firing the gun striking both men in the leg as crime partner
             Montez . . . yelled, 'get them, get them'.  After emptying the weapon
7            Hernandez and Montez returned to the van that Hernandez had been
             driving and fled the scene.  Hernandez was later identified by the wounded
8            victims.  He and Montez were apprehended at their residences on the
             following morning.  Subsequent investigation revealed that Hernandez had
9            attempted to purchase marijuana from the victims and when advised that
             they had none opened fire.  Both Hernandez and Montez denied an
10           involvement in the crime maintaining this denial through three trials, the
             third of which resulted in Herndandez's conviction for the present case and
11           Montez's conviction for murder second degree.  It was noted that all three
             victims were known gang members and that the motive for the crime was
12           believed by the district Attorney's Office to have been gang related.
             Hernandez continued to maintain his innocence until exhaustion of all
13           [appeals] . . . at which time he admitted his guilt[.][2]

14   (*Id.* at 11-12.)

15       Given the opportunity to give his verison of what happened, Petitioner explained

16   that his sister's house had been burglarized, and he had obtained information on the

17   street that made him think certain people had committed the crime.  (*Id.* at 13.)  He and

18   an associate (presumably Montez) went to the house where Petitioner thought the

19   burglars could be found, but were chased away at gunpoint.  (*Id.* at 13-15.)  Petitioner

20   then obtained a gun and returned to area.  (*Id.* at 15.)  He encountered three men on the

21   street and realized that two of them were among those who had chased him away from

22   the house at gunpoint.  (*Id.*)  There was an exchange of words and one of the men, whose

23   hand was in his pocket, took two or three steps towards Petitioner, who pulled the gun

24   and fired.  (*Id.* at 16.)  He then turned around and fired at the other two men.  (*Id.*)  The

25   _____

26       [2] It is unclear where this information came from; the commissioner refers to the opinion of
     the California Court of Appeal, but also to a "ward report" of 2004, and at the end of the
27   quotation to a "61588 diagnostic," a probation officer's report, and a decision made on "6-28-1."
     The poor quality of the transcription is one cause of the problem, but it also appears the
28   participants were not always audible.  (*See* Hearing Transcript at 11-12.)

Board used part of Petitioner's version of events in its ruling.  (*Id.* at 70-71.)

The nature of the offense was one basis for Board's conclusion that Petitioner would be a danger to society if paroled.  The question, common to cases of this sort, is whether the facts of the offense, which undisputedly were egregious, still have any predictive value.  And in this case the calculation is complicated by the conflict between the versions of the crime.  In its decision the Board adopted Petitioners' version in part: "[T]he prisoner as to what he describes as an attempt to recover stolen property where he was threatened by what he describes as an armed person.  He sought out a weapon, put himself back into a dangerous situation, confronted the person who may or may not have been involved in the theft of his sister's property and whiteout seeing a weapon or any (inaudible) and threat he used this, he used his own weapon to shoot and kill the victim then turned the weapon on to the victims' [sic] two companions shooting at them, striking them in the leg." (Hearing Transcript at 70-71.)  The Board did not mention Petitioner's contention that the victim was advancing toward him, after having earlier displayed a weapon and with a hand in his pocket, but it should be noted that Petitioner was convicted of first degree murder, which suggests that the truth is closer to the first version than to Petitioner's.

At the time of the hearing in 2006 Petitioner was fifty-two and had served a bit more than twenty-seven years on his sentence of seven years to life.  This significant passage of time certainly reduces the evidentiary value of the offense itself, but the Court concludes that the circumstances of the offense still are entitled to some weight; whether they would be enough in themselves to constitute "some evidence" need not be resolved, because the denial also is supported by other evidence.

As the Board noted, Petitioner did not present any evidence of job offers, though he claimed a cousin would give him a clerical job, and did not have a plan for getting a job.  (*Id.* at 53-55.)  Furthermore, although he intended to live with his brother and sister-in-law in a two bedroom house with three children, he did not provide evidence of where he would live after an initial period, nor how that many people could be accommodated

in such a small living unit.  (*Id.* at 48.)  Although living with the brother and his family might work out, as the Board noted, he provided nothing from them to show that they had considered the difficulty and accepted it.  (*Id.* at 71-72.)

Finally, Petitioner had a number of disciplinary actions taken against him, the most recent serious one being for mutual combat in 1998.  This was eight years before the hearing, and so surely carries little weight, but it is at least some slight evidence that he would have been a danger to society if released in 2006.

The Court concludes that putting the factors discussed above together – some evidentiary value from the nature of the offense, despite passage of time; the inadequate parole plans; and Petitioner's disciplinary record – there was "some evidence" to support the parole denial.

Because there was no constitutional violation, the state courts' denial of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

### 3.    Appealability

The federal rules governing habeas cases brought by state prisoners have recently been amended to require a district court that denies a habeas petition to grant or deny a certificate of appealability in the ruling.  *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

A Petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a certificate of appealability (formerly known as a certificate of probable cause to appeal).  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The certificate must indicate which issues satisfy this standard.  *See id.* § 2253(c)(3).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: the Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or

1 | wrong." *Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000).

2 |       For the reasons set out above, jurists of reason would not find the result debatable.

3 | A certificate of appealability will be denied.

4 | **CONCLUSION**

5 |       The petition for a writ of habeas corpus is DENIED.  A certificate of appealability

6 | is DENIED.  The Clerk shall close the file.

7 |       **IT IS SO ORDERED.**

8 |

9 | DATED:  December 8, 2009

10 |               JEFFREY S. WHITE

11 |               United States District Judge

UNITED STATES DISTRICT COURT

1                                 FOR THE

2                    NORTHERN DISTRICT OF CALIFORNIA

3

4

5  PETER HERNANDEZ,                   Case Number: CV08-02278 JSW

             Plaintiff,

6                         **CERTIFICATE OF SERVICE**

7     v.

8  B. CURRY et al,

9             Defendant.

    ————————————————/

10

11  I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

12  That on December 8, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by

13  depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

14

15

16  Peter Hernandez
C03015

17  P.O. Box 689
Soledad, CA 93960

18  Dated: December 8, 2009

19                       Richard W. Wieking, Clerk
                       By: Jennifer Ottolini, Deputy Clerk

20

21

22

23

24

25

26

27  G:\JSWALL\Pro-Se Prisoner\2008\Hernandez2278.ruling.wpd

28